Your Honor, the underlying issue of this case, for all of the complexity that it has, is simply what was awarded by the Domestic Relations Order that was entered when Ms. Pritchow and Mr. Ross divorced. The district court held summarily with, under the well-understood provisions of ERISA, that's governed by state law. The ERISA, an order has to be a quadro to award pension benefits. And if the order is a quadro, whether the order is a quadro or not, is governed by ERISA law. Once it is, then the court defines pension benefits according to state law. We don't dispute this order meets the quadro requirements. The issue is instead what it divided, and that's governed by state law. Counsel, you have a very appealing case on the equities. However, I have trouble with the idea, which I think is necessary to your side prevailing, that a state superior court order that has not been appealed or set aside or otherwise impeached is not state law. And it appears that under the state superior court order, the Qualified Domestic Relations Order that the superior court entered at the time of the divorce, that the ex gets all the money. Well, the issue in this case is how that order should be construed. It may be that under your argument about how state law should be construed, that that Qualified Domestic Relations Order should not have been entered, but it was. Well, under state law, under Washington law, and I will say that I was sort of shocked by the district court opinion, district court said that on page 6, Washington 6, says Mr. Ross' arguments to the contrary are unpersuasive. Mr. Ross argues that Washington state controls the outcome of this case, but she is wrong. That is wrong. That really is fairly immaterial. I mean, ultimately, let's assume we're applying Washington law. If you have language as clear as this language, in a context in which some provisions say do do with the way you're suggesting, but this one doesn't, why do we think Washington would do otherwise? Because Washington has done it. Not in this context, not in a similar, not with a similar. Yes, they have. It's the Chavez case. Yes, I know. What's similar about it? First of all, wasn't Chavez about pension benefits rather than survivors? This is about pension benefits, too. No, it's not. At this point, it isn't about pension benefits. Wasn't Chavez about pension benefits? I'm not sure, but the principle of law that Chavez applies, applies in this case as well. First of all, the well-established rule of law is that pension benefits, survivor benefits, first of all, are vested in the surviving spouse to the extent they're not awarded to a pre-deceased spouse or for a divorcing spouse. So the issue in this case is what was awarded to her. Well, with respect to that, let's look at the QDRO, paragraph 10. Exactly, exactly. In the event the planned participant dies after commencement, alternate payee shall receive the entirety of the survivor benefit. Is there any reason why someone can't assign the entirety of a survivor benefit during his life? Washington courts can do it. The issue is how that language should be construed. First of all, at the point this thing was written, there was no other wife. Is that right? Well, that's irrelevant. It's not irrelevant because of course they would write it that way because there was nowhere else for it to go. No, a participant can always be remarried. A participant always works longer and accrues benefits after he gets divorced and can be remarried. Could be, but it was a perfectly sensible thing to write at that time because there was no other possible survivor. In Marriage of Chavez, the court order, and I have copies of it. But that was about pension benefits, which really is different because, you see, that's why in this provision you had the pension benefits split up because Mr. Pritchett had to live too, right? So you took the money and you split it up between him and his former wife. They both existed, but at the time they were writing this thing, there was no one else who existed who could have gotten their survivor's benefits. Well, I think ERISA needs to be construed, and I think the law recognizes that ERISA is construed as enabling state courts to divide benefits in such a way as to protect not only the divorcing spouse but the participant and someone they may marry later. Let's say you're right. It's a general matter. What you say makes sense. People get divorced, they remarry. Sometimes one spouse is bitter at the other and wants to take all the money so that the other spouse won't have enough money to remarry or anyone who remarries the other spouse is going to starve after they make that mistake. Nevertheless, why isn't the full state of applicable Washington law settled by the QDRO, which is a state superior court decision that's not appealed and is final? Well, first of all, because this issue didn't materialize until Mr. Rush retired. Well, presumably when people write a contract and agree on an order, they're anticipating reasonably likely scenarios, and what I've just described and what happened here is a likely scenario. It happens all the time. Well, still, the issue in this case didn't come into fruition until Mr. Rush retired and Ms. Rush submitted a claim for benefits, and the Longshoremen's Union read paragraph 10 as awarding the benefits all to Ms. Pritchett. That is directly contrary to the holding in Chavez. Now, I'll just tell you that Chavez, and by the way, I went down... I get it. Chavez says if a decree is ambiguous, it may be. That's right. But I don't see the ambiguity in the quality in the QDRO. In Chavez... I have copies of all these. Well, let me ask you this. Are you saying that Mr. Rush did not have the legal power to assign those benefits to someone else? I don't think it's a question Mr. Rush is saying. It's a question of the court dividing. But this is his choice. This is not after the fact. Let me just... Let me ask you one other thing. Okay, but let me tell you what the... In Marriage of Chavez... We've read Marriage of Chavez. All right, let me explain it to you then so you'll understand, because I don't think you're understanding. Marriage of Chavez, the court awarded 50% of the benefits. The court said that's without more, that is ambiguous as a matter of law and must be construed as limited to the benefits occurred during the marriage. Now, 50% is neither more nor less ambiguous than 100%. It's neither more nor less ambiguous than all, because they all don't specify all of the benefits. But this particular provision has the kind of rule you're talking about for the pension benefits, but it doesn't have it for the survivor's benefits. It has two different rules in here. So that tells you something about what was intended. It looks to me like Chavez, the court identifies an ambiguity. Right. And then they drive a truck through the hall. That ambiguity... It's a little bit like finding that somebody's will is invalid, so treating his death like death without a will and applying the statute of descent and distribution. But Chavez's good law. The thing here is in this QDRO, there's no ambiguity in it. It just says X gets all the money. But all of what money? That's why in Chavez it says that X gets 50% of the money. 50% of what money? That's the source of ambiguity. Can I change the subject a little bit to fees? You are the cross appellate on the fees. Appellee on the fees, right? One thing that struck me about the fees is that the person paying the fees isn't here, i.e., the pension plan. How did that come about? I honestly don't know. They filed a motion to withdraw. They filed an interpleader action so that... I'm sorry? They filed an interpleader action. So they're supposed to get fees against them without having a chance to appeal it? They filed the action so that Kim Ross and Gene Pritchard could present their claims. I understand that, but doesn't somebody... Were they allowed... My reading of the record is that they, perhaps because of a screw-up by our clerk's office or somehow they were not permitted to file a brief here to argue against the fees, that they should get fees, that they shouldn't be assessed... Wait a minute. Yes, that they shouldn't be assessed the fees. You don't know. I can ask my opponent. But the fees is a... The district court declined to award fees, which I think is entirely correct. Ms. Ross doesn't have a lot of money. My understanding is that Ms. Pritchard doesn't have either. One of the basic goals of the RISD is to enable people to be able to contest their legitimate claims to plan benefits without being deterred or punished by award of attorney's fees. But what's your response? You haven't heard from Mr. Olson yet, but what's your response? He's going to say that attorney's fees should be awarded. Who pays those attorney's fees? The plan trustees or the losing party? It depends on how the award is structured. But this is a contest between the two plan beneficiaries. I thought in this case the plan did not seek attorney's fees. Right. Instead, the ex-spouse sought attorney's fees. Ms. Ross is not seeking attorney's fees simply because she believes that it's not equitable. Either side, both sides should have the opportunity to come in and argue their positions without being deterred by an occurrence of attorney's fees. And I think that should apply to both of them. I have one other question to go back to the merits of it. As I understand the survivor's benefit, the amount of it, because it's going to be not much more than what she was getting as a percentage of the pension fund when he was alive, is that right? In other words, because it's not the same amount of money. Right. So that if you were looking at it in terms of what does she need to live on, this would make sense to say she should get the entirety of the ______. Well, the risk of the law is very clear and undisputed, that any survivor benefit that was not awarded to Mrs. Pritchell vests in Mrs. Ross when Mr. Pritchell retired. The law is undisputed on that. So the issue in this case is what was awarded to Mrs. Pritchell. That is the issue in this case. And under Chávez, in this case, the court just said 50 percent. Actually, the court said all. In Chávez, the court just said 50 percent. Chávez said that's ambiguous as a matter of law because it doesn't specifically say 50 percent of what. And when it's ambiguous in that matter, it must be construed as 50 percent of the benefits that accrued during the divorce, not the whole benefits, so that the divorce spouse gets their share of the benefits accrued during the divorce and the surviving spouse gets the rest. In this case, Mr. Ross and Mrs. Pritchell were divorced after, I think, 26 years, 23, 26, something like that. And then he married Mrs. Ross and they lived together for another 18 years. So there's two credible, under Washington law, it's not credible to give Mrs. Pritchell all of the survivor benefits. It's directly contrary to the decision in Chávez. And by the way, I went down to the law library Thursday and I went up to Westlaw and I typed in marriage of Chávez and I typed in U.S. and a lot of state of Washington searches. There were 28 cases that came up. I have notes of all those cases that I can leave with you if you want. I also have copies of good many, quite 20 or so cases I'd be happy to leave with you if you want. But every single one of those cases cited Chávez with approval. It didn't involve the exact issue in this case about how, about whether this award, an award structured the way this was, was ambiguous, which Chávez held that it is, or how the ambiguity should be revolved. But they invariably cited Chávez as proper, as one of the cases that governs Washington law dividing pension defense, along with marriage of Pee and marriage of Bolichek. Marriage of Pee held that benefits could be decided on a percent basis, that the typical percent basis year of service divided by total years times 50 percent, but that it couldn't be applied to benefits that were approved just after, by the participant's service after the divorce. It could be applied to cost of living increases, but not to the amount of benefits accrued after the divorce. That's been cited in approval in all of those cases. There's been no case that's ruled against the holding in Chávez that we rely on, which is an award of, in Chávez the award was 50 percent, but I think the logic is the same for an award of 100 percent or of all. That is the award of 50 percent or 100 percent or all of the benefits without more. It is ambiguous as a matter of law because it does not say which benefits it applies to, and Chávez held in that case that if it does not say which benefits it applies to, it applies to the benefits which were accrued during the marriage, not all the benefits. That's why in Chávez it's also equitable, because it's equitable for a spouse that marries after the divorce to be able to share in the benefits that are earned after the divorce. And there's many Washington cases that say that properties divided in a divorce case for the specificity of giving the divorce spouse an interest, but also preserving an interest in a later spouse. Thank you, Counselor. Your time has expired. Okay, thank you. We'll hear from Mr. Olson. Good morning. William Olson on behalf of Jeanette Critchell. I'm going to address the appeal issue first and then the cross-appeal. On the appeal issue, I think there's just three points I need to make. The first one, I don't think I need to belabor, but I don't believe the analysis here needs to proceed any further than the expressed terms of the quadro. Does it make any difference whether it's federal or state law? You know, I don't think it does for the reason that the bench has pointed out. You know, whether we're under state law or federal law, this quadro is clear. But the quadro is subject to federal law, but it makes no difference. Because the quadro expressly provides that the entire survivor pension is payable to Ms. Critchell. And I want to point out, too, that in 1994-95, when this quadro was prepared, it was prepared by Ms. Critchell's divorce attorney in consultation with the Pension Plan Council, following their procedures, using their form, and determined at the time to meet ERISA requirements, be a valid ERISA quadro order, and so confirmed by the King County Superior Court. I gather what we're hearing from opposing counsel is that that order is defective to the extent that it provides that Ms. Critchell is to receive the survivor benefits, contrary to state of Washington law. What's your specific response to that? First of all, the direct response is federal ERISA law preempts state law. We don't need to get into finding issues of state law regarding domestic relations laws. The ERISA case law says this court doesn't need to look into that. But if we want to look into that anyways, if we want to go down that path, take a look at the facts here where Joe Ross was vested, got maximum vesting in this ERISA plan in 1998. He didn't marry Kim Ross until 2003. There isn't any community interest to have been dealt with. The quadro was entered in 95, is that right? January of 1995, and he became fully vested in 1998 after 35 years of service. He married Kim Ross in 2003. So where's the community property interest if we were going to be concerned about that at all? You know, the third point that I wanted to make, and my second point was this community property interest issue that I just addressed, but my third point that I wanted you to understand is that in the quadro itself, it provides, consistent with Section 1056 of ERISA, that Ms. Pritchard is deemed the surviving spouse. And Section 1056 provides that the former spouse shall be treated as the surviving spouse, and any current spouse of the participant shall not be treated as a spouse for these purposes. So in looking at the quadro, you not only need to look at the section that was quoted earlier, I think it was Paragraph 10, but look at the section where she's designated as the surviving spouse as well. So as a matter of law, she is the surviving spouse, not the current spouse. If you believe that Chavez applies here, then Chavez essentially has a sort of a clear statement rule, right, which says that you can, because it did there say 50%, and they said, well, 50% of what isn't clear? All right, so the question is, why is this any more clear? As the district judge said, I can't imagine the language could hardly be more clear. It says entire. There's no issue of construction or interpretation, you know, at all. And as you, Your Honor, have pointed out in your questions, the Chavez case didn't involve this circumstance. We're not dealing with a, it did not deal with a quadro prepared pursuant to ERISA requirements confirmed by ERISA plan counsel and the superior court. The case is just not at all on point. I want to go to the cross-appeal issue, if I may. Yeah, who pays? The plan isn't represented here, so they have, they're out of the picture, right? No, they're not out of the picture. Do they have notice? You're arguing that the plan should pay, but the plan's not here. And so what are we supposed to do about that? It's not my responsibility that they're not here. I filed a notice of cross-appeal. I think you argued that they should not be allowed to file a brief here, didn't you? Yes, I did. So I guess it is your responsibility that they're not here. Well, I guess if that motion is granted or accepted, that is my position that they're not entitled to argue because they didn't file a brief. Let me ask you something else about the attorney's fees. I read the statute, and it uses the word may. 29 U.S.C. 1132-G1 says that the court may allow a reasonable attorney's fee. And then I look at our decision in Simonia, and it says we follow the five Hummel factors. And then I look at the five Hummel factors, and there are five of them, culpability or bad faith. Well, neither the widow nor the plan have any culpability or bad faith in what they did. The next one is ability of the opposing parties to satisfy an award. Well, in an interpleader, there's always ability if the stake is greater than the award because usually the award comes out of the money. So basically, the plan will get money instead of your client getting money to the extent that the plan got fees. But I don't know if the plan has sought fees. As far as ability of the widow to pay, there's been no showing that she has the ability, and it seems to be accepted by all the litigants that she probably doesn't. Next is whether an award of fees will deter others from acting under similar circumstances. It's hard to see why anyone's done anything bad that needs to be deterred. They just have a dispute about whether the ex-wife or the widow gets the money. It looks like a good faith dispute. Four, whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA. Well, arguably, everybody here is attempting to resolve a significant legal question regarding ERISA, the relative scope of state law and the clarity of the QDRO. I don't know that that cuts much one way or the other. And five, the relative merits of the positions. Let's assume that the merits all go your way. It's still just one out of five factors in a discretionary award. So why shouldn't we leave it alone? Judge Kleinfeld, the humble factors are not the factors you should be looking at. I brought this appeal on this issue because the district court applied the incorrect legal standard, and I think that's a de novo issue for you. Citing the May language, the correct legal standard is a de novo issue. But it's still abuse of discretion in terms of the trial judge, is it not? It's still a discretionary decision. Right. But before you can get to the exercise of that discretion, you've got to apply the correct legal standard. Which is? The correct legal standard tells the court how to exercise that discretion. Do you have any interpleader cases in which she's been awarded against the plan? In the brief, I think there's a case called Lee. Lee v. West Coast Life Insurance, 668F 3rd, 1004, 9th Circuit, 2012. That's in the brief? That's in the brief. And what that case points out is a person or entity in the situation of the pension plan here They can't hide behind an interpleader action. They can't just put the money into court and wash their hands of it. They help prepare this order, this quadro. And what I firmly believe they should have done is they should have stood behind that order, and there was a challenge to it by Ms. Ross, the plan administrator. If you've seen her correspondence, she did what she should have done. She said, this quadro is clear. The money goes to her. What do you need an ally for? You're doing fine. Pardon? What do you need an ally for? You're doing fine. As soon as I hear a metaphor, I get suspicious. Hide behind an interpleader. Nobody's hiding. It's the most public thing in the world. When there are conflicting claims to money, the party holding the money that knows it owes it to somebody and not who typically files an interpleader action, so they won't have to pay twice. Well, the lead case that I cited to you says you don't get out of jail free card by filing an interpleader action. They're not playing a monopoly. They're just trying to avoid paying the money twice. Another metaphor. If you'll allow me to state my view on this, that I think the plan should be. See if you can do it without a metaphor. I think the plan should have stood behind. What do you mean stood behind? Do you mean filed a brief in line with your brief? No, they should have adhered to their name. You mean paid your client without filing, instead of filing an interpleader action? Yes. Ah, now I get it. Thanks. Yes, and because that's the order that they had entered, that's the order as they understood it. Okay, so what you mean by stood behind is not that they should have filed a green brief or another red brief. What you mean is they should have just paid the money to the ex-wife. I think they should have honored the quadro, which is paying it to the ex-wife, and then they should have advised Ms. Ross, if you really think you're entitled to this money. Sue us and we'll pay you twice if we lose. You need to bring an action. And I think they needed to defend that action and to defend the quadro that they. Well, let's go back then to our procedural problem. They're not here. You certainly had something to do with them not being here, i.e., you, as I read the record, encouraged the clerk's office to not let them be here because they're not parties to the appeal, and you certainly insisted they shouldn't be able to argue. And how could we possibly adjudicate anything against them when they're not here? They're a party to the appeal. Well, I thought that the position of the clerk's office was that they're not a party. That's why they weren't allowed to file a brief or appear. They were a party to the appeal. They're designated on the notice of the cross appeal. They participated in the appeal through the mediation conference. When the case was set up on the Ninth Circuit's docket, they were listed as a party. Their counsel were listed. They participated in the mediation procedures. And when it came time for them to file a brief, they didn't file a brief. And when they didn't file a brief, I moved under FRAP 31C to have them not be able to argue. According to the lawyer for the joint trustees, the docket activity terminating him from the case was initiated by the clerk's office. And that order came out of the clerk's office. You know, there was first an order out of the clerk's office or a minute record of some sort that said that the plans counsel were, I don't know, dismissed isn't the right word, but were not allowed in the case because they hadn't entered an appearance. And I'm sorry, sir. Let me get back to it seems to me that your current argument would be a good argument for why attorney's fees should not be awarded in favor of the plan against the corpus, which is ultimately the money that under your argument would go to the ex-wife. So your argument for arguing that the plan should have just paid the ex-wife without embroiling her in an interpleader would justify denial of fees in favor of the plan that would come out of the ex-wife's money. But the district judge didn't award fees that would conflict with that argument. As for your argument that the fees should have been awarded in favor of the ex-wife against the widow, I think you've conceded that that is a discretionary award, although you've disagreed with how it should be reviewed, but you've agreed that the district court had discretion. Do I have your case right so far? Yes, with two caveats. First one, two ways to go about attorney's fees. Section 1132 discretionary, quadro mandatory. Quadro says shall. And the quadro says that there's a dispute. Quadro doesn't say anything about attorney's fees. Yes, it does. Yes, it does. Well, my mistake. Where? Where is it? It's on paragraph 14, page 5 of the order going on to page 6. It says that there's a dispute with the plan administrator, prevailing party gets attorney's fees. That's in connection with this 1995 order. Right. Okay. Now, this is 2014, and this lawsuit started entirely separate and long after the divorce was filed. Yes, that's true. It's about that 1995 order, though, and there's a dispute. So you're relying on the 1995 order for a claim of attorney's fees in this litigation? Yes, because it says if there's a dispute with the plan administrator over the payment of the benefits under that order, the prevailing party gets attorney's fees. Wait a minute. Such party shall move upon motion before the family law motion document of the King County Superior Court for clarification of rights and responsibilities, and then shall be a prevailing party shall be entitled to reasonable attorney's fees. It has nothing to do with this litigation. I think that's a distinction without a difference, Your Honor. The words of this make it clear that it's with a difference. It says such party may move upon the motion, upon motion before the family law motion docket of the King County Superior Court. That was never done. And we're not in the King County Superior Court. This is the United States Court of Appeals for the Ninth Circuit, different court. And that attorney's fees provision, which does say shall, speaks to the family law motion docket of the King County Superior Court, which we are not. Your Honor, with all due respect, I think that is a distinction without a difference. Thank you, Counsel. We understand your argument. Our questions have taken you way over time, so your time has expired, Counsel. Thank you. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Kleinfeld, Berzon